1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J. GARY SHANSBY,

Plaintiff,

v.

EDRINGTON, USA, INC., et al.,

Defendants.

Case No.  22-cv-06907-JSC

**ORDER RE: DEFENDANT'S MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 22

J. Gary Shansby, trustee of the Shansby Community Property Trust (Shansby), sues Edrington USA and two other related unserved entities arising out of a tequila distribution venture. Pending before the Court is Edrington USA's motion to compel arbitration.  (Dkt. No. 22.)[1]  After carefully considering the parties' submissions, and having had the benefit of oral argument on March 9, 2023, the Court GRANTS the motion to compel.  Shansby and Edrington USA are parties to an agreement with an arbitration provision and a delegation clause. As there is a good faith argument Shansby's claims relate to or are connected with the agreement, the Court must compel arbitration pursuant to the delegation clause.

## COMPLAINT ALLEGATIONS

Shansby successfully founded the tequila brand Tequila Partida.  In 2016, Shansby's wholly-owned company Tequila Partida, LLC entered into a National Distribution and Collaboration Agreement with Edrington USA and The Edrington Group Ltd, "pursuant to which Edrington assumed exclusive control of all sales, marketing, United States management, and distribution functions."  (Dkt. No. 1 at 10 ¶ 12.)  At the beginning of 2017, Tequila Partida and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   Edrington entered into a "First Restated National Distribution and Collaboration Agreement."  (*Id.*

2   ¶ 14.)  The following year they entered into another amended "National Distribution and

3   Collaboration Agreement."  (*Id.* at 10-11 ¶ 15.)  Shansby, as CEO of Tequila Partida, signed all

4   three Distribution Agreements.  (*Id.* at 31, 57, 84.)

5       After the parties entered into the Distribution Agreements, Tequila Partida experienced

6   declines in every market, including California, the largest United States tequila market.  (*Id.* at 11

7   ¶ 17.)  Edrington was responsible for the brand's decline.  (*Id.* ¶ 18.)  Shansby then met with

8   Edrington executives in Scotland.  The executives "acknowledged the failure of Edrington to

9   discharge its responsibilities, and they committed, on behalf of all three ownership-related entities,

10  to invest the necessary resources in the Tequila Partida brand to ensure its growth and success."

11  (*Id.* ¶ 19.)

12      But Edrington failed to improve its performance and so Shansby's ownership interest in

13  Tequila Partida was substantially impaired.  (*Id.* at 11-12 ¶¶ 20-21.)  In 2021, Shansby was forced

14  to sell Tequila Partida to a third party.  (*Id.*)  Prior to the sale, Edrington had a contractual right to

15  increase its membership interests in Tequila Partida, along with a right to acquire Shansby's

16  interest.  (*Id.* at 12 ¶ 24.)  Thus, at the time of the sale to the third party, Shansby and Edrington

17  owned membership interests in Tequila Partida which were sold to the third party pursuant to a

18  Membership Interest Purchase Agreement ("Purchase Agreement") dated December 31, 2021.

19  (Dkt. No. 34-2.)

20      The Complaint makes state law claims for breach of the Distribution Agreements (First

21  Cause of Action), Breach of the Implied Covenant of Good Faith and Fair Dealing arising from

22  the Agreements (Second Cause of Action), Misrepresentation (Third Cause of Action), Restitution

23  (Fourth Cause of Action), and Declaratory Relief (Fifth Cause of Action).  The contract claims

24  allege that because of Edrington's brand mismanagement, Shansby's membership interest was

25  impaired and he was required to accept a lower sale price.  The Restitution and Declaratory Relief

26  claims allege that because Edrington breached the Distribution Agreements, Edrington is not

27  entitled to receive any membership interest in Tequila Partida and thus should disgorge any

28  amounts received from the brand's sale and should not receive any amounts in the future under the

1   December 2021 Purchase Agreement.

2   **PROCEDURAL HISTORY**

3   Shansby sued Edrington in state court.  Edrington removed to federal court on the basis of

4   diversity jurisdiction.  It moves to compel arbitration on the grounds that (1) the Purchase

5   Agreement to which Shansby is a signatory requires arbitration of all disputes, and (2) equitable

6   estoppel requires Shansby to arbitrate its claims arising under or related to the Distribution

7   Agreements.  The Court heard oral argument on March 9, 2023.

8   **DISCUSSION**

9   The Federal Arbitration Act (FAA) governs arbitration agreements "evidencing a

10  transaction involving commerce."  9 U.S.C. § 2.  Such agreements "shall be valid, irrevocable, and

11  enforceable, save upon such grounds as exist at law or in equity for the revocation of any

12  contract."  *Id*.  In resolving a motion to compel arbitration under the FAA, a court's inquiry is

13  limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does,

14  (2) whether the agreement encompasses the dispute at issue.  If both conditions are met, the [FAA]

15  requires the court to enforce the arbitration agreement in accordance with its terms."  *Lim v.*

16  *TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021).

17  The Purchase Agreement includes a broad arbitration clause:

18
19  > Any dispute, controversy, or claim arising out of or in connection with
    > or relating to this Agreement or any breach or alleged breach hereof,
    > will, upon the request of any party involved, be submitted to, and
20  > settled by, arbitration in San Francisco, California, pursuant to the
    > JAMS rules of arbitration; provided, however, that nothing in this
21  > paragraph shall prevent a party from commencing legal proceedings
    > for injunctive or other equitable relief in a federal or state court in San
22  > Francisco.

23  (Dkt. No. 34-2 at 71 § 10.10(b).)  As to the first gateway issue, it is undisputed Shansby signed the

24  Purchase Agreement and thus agreed to the arbitration provision.  (*Id.* at 72; *see also* Dkt. No. 30

25  (Shansby's opposition not disputing Shansby signed the Purchase Agreement with the arbitration

26  provision).)

27  The second issue is trickier.  The question whether an arbitration agreement covers a

28  dispute "can be expressly delegated to the arbitrator where the parties *clearly and unmistakably*

United States District Court
Northern District of California

1   provide for it." *Lim*, 8 F.4th at 999-1000 (cleaned up); *see also Henry Schein, Inc. v. Archer &*

2   *White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (stating the Supreme Court "has consistently held

3   that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties'

4   agreement does so by 'clear and unmistakable' evidence"). Edrington argues the Purchase

5   Agreement clearly and unmistakably provides for the arbitrator to decide whether Shansby's

6   claims are covered by the Purchase Agreement arbitration provision because it incorporates the

7   JAMS rules of arbitration and those rules empower the arbitrator to decide arbitrability.

8         The Purchase Agreement clearly and unmistakably delegates arbitrability to the arbitrator

9   under binding Ninth Circuit law. In *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), the

10  Ninth Circuit held "incorporation of the AAA rules constitutes clear and unmistakable evidence

11  that contracting parties agreed to arbitrate arbitrability" because one of the AAA rules gives the

12  arbitrator the power to rule on arbitrability. *Id.* at 1130. JAMS rules, like AAA rules, give the

13  arbitrator the power to decide arbitrability. *See Lorenzo Ford v. Hyundai Motor Am*., No. 8:20-cv-

14  00890-FLA (ADSx), 2021 U.S. Dist. LEXIS 249881, at *21-22, 26-27 (C.D. Cal. Oct. 5, 2021)

15  (finding that nonsignatory plaintiff's claims "relie[d] on contract terms" containing an arbitration

16  provision and holding that incorporation of the JAMS rules in that provision "provides clear and

17  unmistakable evidence of . . . intent to delegate questions of arbitrability to an arbitrator");

18  *Teleport Mobility, Inc. v. Sywula*, No. 21-cv-00874-SI, 2021 U.S. Dist. LEXIS 105678, at *10

19  (N.D. Cal. June 4, 2021) (incorporation of JAMS commercial rules clearly and unmistakably

20  delegated arbitrability to the arbitrator). Thus, under *Brennan*, the Purchase Agreement arbitration

21  provision clearly and unmistakably delegates arbitrability to the arbitrator. Shansby does not

22  argue otherwise.[2]

23  _____

24  [2] *Brennan* left unresolved whether its ruling applies when at least one of the arbitration agreement
    parties is unsophisticated. 796 F.3d at 1131; *see also MacClelland v. Cellco P'ship,* No. 21-CV-

25  08592-EMC, 2022 WL 2390997, at *3 (N.D. Cal. July 1, 2022) ("Where at least one party is
    unsophisticated, courts in this district and elsewhere have routinely found that the incorporation of

26  the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate
    arbitrability"). But there is no dispute Shansby is sophisticated. He is a successful businessman

27  who founded a prestigious tequila brand and, more importantly, was represented by counsel in
    negotiating the Purchase Agreement with the arbitration provision incorporating JAMS rules.

28  (Dkt. No. 34-2 at 69.)

United States District Court
Northern District of California

4

But Shansby contends there is no good faith argument the arbitration provision covers his claims and so the Court should not go through the meaningless exercise of compelling arbitration when the arbitrator is just going to conclude the claims are not arbitrable. Not so. The arbitration provision broadly covers any "claim arising out of or in connection with or relating to this Agreement." (Dkt. No. 34-2 at 71 § 10.10(b).) Each claim on its face arguably relates to or is connected with the Purchase Agreement. The breach of contract and breach of implied covenant claims, while premised on breach of the Distribution Agreements, allege that as a result of Defendants' breaches Shansby "was obliged to accept a purchase price when the membership interests were sold that was much lower than it should have been." (Dkt. No. 1 at 13 ¶¶ 29, 32.) These claims arguably refer directly to, or are connected with or related to the Purchase Agreement which documented the sale of the lower price. Similarly, the Restitution and Declaratory Relief causes of action expressly seek to disgorge from Defendants amounts received under the Purchase Agreement and to assign to Shansby "the right to receive any amounts in the future, under the December 31, 2021 Membership Interest Purchase Agreement." (*Id.* at 14 ¶¶ 42, 44.) Indeed, the Complaint's demand seeks "restitution of all amounts received, or to be received in the future by Defendants *under the Membership Interest Purchase Agreement.*" (*Id.* at 15 (emphasis added).) So, in light of the Complaint's allegations, there is a good faith argument Shansby's claims relate to or are connected with the Purchase Agreement.

Shansby's insistence he cannot be compelled to arbitration under this provision because the Purchase Agreement is "not the basis for any cause of action" and was not attached to the Complaint, (Dkt. No. 30 at 4), ignores the arbitration provision's language. It applies to any claim that is related to or connected with the Purchase Agreement, not just claims that are based upon or allege a breach of the Purchase Agreement. The lone case Shansby cites to support his opposition to compelling arbitration under the Purchase Agreement, *Genoptix, Inc. v. Dabbas*, No. 3:17-CV-1468-CAB-AGS, 2017 WL 4541755, at *1 (S.D. Cal. Oct. 11, 2017), is inapposite. It did not involve a complaint in which the plaintiff expressly referenced the agreement containing the arbitration provision and sought to recover monies paid pursuant to that agreement. Thus, the motion to compel arbitration must be granted because of the Purchase Agreement alone.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### CONCLUSION

As the Purchase Agreement delegates arbitrability to the arbitrator, and as there is a good faith argument Shansby's claims are covered by the arbitration provision, the claims against Edrington USA are compelled to arbitration pursuant to the Purchase Agreement arbitration provision's delegation clause.  The claims against Edrington USA in this Court are therefore STAYED pending resolution of the arbitration.

As stated on the record at oral argument, Shansby is granted an additional six months from the date of this Order to serve the remaining defendants.  The Court sets an initial case management conference for Shansby and the remaining defendants for November 2, 2023 at 1:30 p.m. via Zoom video, with a joint case management conference statement due one week in advance.

This Order disposes of Docket No. 22.

**IT IS SO ORDERED.**

Dated: March 9, 2023

JACQUELINE SCOTT CORLEY
United States District Judge