UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. GARY SHANSBY, | Case No.  22-cv-06907-JSC |
| Plaintiff, | |
| v. | **ORDER RE: DEFENDANTS' MOTION TO STAY LITIGATION OR DISMISS PLAINTIFF'S COMPLAINT** |
| EDRINGTON, USA, INC., et al., | |
| Defendants. | Re: Dkt. Nos. 52, 53 |

J. Gary Shansby, trustee of the Shansby Community Property Trust (Shansby), sues Edrington USA, Inc. (Edrington USA), The Edrington Group Ltd. (Edrington Group), and The Robertson Trust (Robertson) for claims arising from a tequila distribution venture.  Before the Court is Edrington Group's motion to stay litigation or dismiss Plaintiff's complaint for failure to state a claim and Robertson's motion to stay litigation or dismiss Plaintiff's complaint for lack of personal jurisdiction and failure to state a claim.  (Dkt. Nos. 52, 53.)[1]  After carefully considering the briefing, and with the benefit of oral argument on August 3, 2023, the Court DENIES Defendants' motions to stay pending completion of Edrington USA's arbitration with Shansby, GRANTS Robertson's motion to dismiss for lack of personal jurisdiction with leave to amend, and GRANTS Robertson and Edrington Group's 12(b)(6) motion to dismiss the complaint with leave to amend because Plaintiff lacks standing to pursue claims derivative of Tequila Partida's rights under the Distribution Agreements.

## COMPLAINT ALLEGATIONS

Shansby successfully founded the tequila brand Tequila Partida.  (Dkt. No. 1 at 9-10 ¶¶ 7-

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

11.)  In 2016, Shansby's wholly-owned company Tequila Partida, LLC entered into a National Distribution and Collaboration Agreement with Edrington USA and Edrington Group, "pursuant to which Edrington assumed exclusive control of all sales, marketing, United States management, and distribution functions."  (Dkt. No. 1 at 10 ¶ 12.)  At the beginning of 2017, Tequila Partida and Edrington USA entered into a "First Restated National Distribution and Collaboration Agreement." (*Id.* at 10 ¶ 14.)  The restated agreement disclaimed Edrington Group's obligations under the original agreement:

> On December 2, 2016, Partida, The Edrington Group Ltd., a Scottish limited company ('TEG') and Edrington Americas entered into that certain National Distribution & Collaboration Agreement (the "Original Agreement").  Partida and TEG have determined that EDRINGTON USA, rather than TEG, is the proper party to receive the benefits provided, and perform the obligations of TEG under, the Original Agreement.  The Parties desire to amend and restate the Original Agreement in its entirety as set forth herein.

(*Id.* at 41.)  The following year Edrington USA and Partida entered into another amended "National Distribution and Collaboration Agreement."  (*Id*. at 10-11 ¶ 15.)  Shansby, as CEO of Tequila Partida, signed all three Distribution Agreements.  (*Id.* at 31, 57, 84.)

After the parties entered into the Distribution Agreements, Tequila Partida experienced declines in every market, including California, the largest United States tequila market.  (*Id.* at 11 ¶ 17.)  Edrington was responsible for the brand's decline.  (*Id.* ¶ 18.)  Shansby then met with Edrington executives in Glasgow, Scotland.  (*Id.* ¶ 19.)  The executives "acknowledged the failure of Edrington to discharge its responsibilities, and they committed, on behalf of all three ownership-related entities, to invest the necessary resources in the Tequila Partida brand to ensure its growth and success."  (*Id*.)

Edrington failed to improve its performance, so Shansby's ownership interest in Tequila Partida was substantially impaired.  (*Id*. at 11-12 ¶¶ 20-21.)  In 2021, Shansby was forced to sell Tequila Partida to a third party.  (*Id*.)  Prior to the sale, Edrington USA had a contractual right to increase its membership interests in Tequila Partida, along with a right to acquire Shansby's interest.  (*Id*. at 12 ¶ 24.)  Thus, at the time of the sale to the third party, Shansby and Edrington owned membership interests in Tequila Partida that were sold to the third party pursuant to a

2

1   Membership Interest Purchase Agreement ("Purchase Agreement") dated December 31, 2021.

2   (Dkt. No. 34-2.)

3       Plaintiff sues Edrington USA, Edrington Group, and Robertson, which Plaintiff alleges

4   owns and controls Edrington, for breach of the Distribution Agreements (First Cause of Action),

5   Breach of the Implied Covenant of Good Faith and Fair Dealing arising from the Distribution

6   Agreements (Second Cause of Action), Misrepresentation (Third Cause of Action), Restitution

7   (Fourth Cause of Action), and Declaratory Relief (Fifth Cause of Action).  The contract claims

8   allege Shansby's membership interest was impaired and he was required to accept a lower sale

9   price because of Edrington's brand mismanagement.  Plaintiff's claims for restitution and

10  declaratory relief allege Edrington is not entitled to receive any membership interest in Tequila

11  Partida because Edrington breached the Distribution Agreements.

12                              **PROCEDURAL HISTORY**

13      Shansby sued Defendants in state court.  Edrington USA removed to federal court on the

14  basis of diversity jurisdiction.  In March 2023, the Court granted Edrington USA's motion to

15  compel arbitration and stayed Shansby's claims against Edrington USA pending resolution of the

16  arbitration.  (Dkt. No. 38.)  Edrington Group and Robertson now move the Court to stay this

17  litigation in light of Plaintiff's pending arbitration against Edrington USA.  In the alternative,

18  Edrington Group and Robertson seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for

19  failure to state a claim.  Robertson independently seeks dismissal under Federal Rule of Civil

20  Procedure 12(b)(2) for lack of personal jurisdiction.

21                                  **DISCUSSION**

22  **I.    Stay Pending Arbitration**

23      Edrington Group and Robertson seek a stay on equitable grounds because "Plaintiff should

24  not be permitted to make an end-run around the [Purchase Agreement] arbitration clause he agreed

25  to (with the assistance of counsel) by prosecuting identical claims in this Court."  (Dkt. Nos. 52 at

26  15, 53 at 17.)  They argue "allowing Plaintiff to proceed with overlapping, if not identical, claims

27  against [Edrington Group] and [Robertson] in this Court would render the pending arbitration

28  proceedings with Edrington USA meaningless and effectively thwart the federal policy favoring

United States District Court
Northern District of California

3

1   arbitration.  Parallel litigation will also risk inconsistent rulings, result in wasted resources, and

2   run counter to basic principles of judicial economy."  (Dkt. Nos. 52 at 10, 53 at 11.)

3          Given Defendants move to dismiss the claims as well, it is premature to determine if a stay

4   is warranted.  The Court will first determine what, if any, claims Plaintiff may pursue in this

5   action against Defendants.  Once the pleadings are settled, Defendants may renew their stay

6   motion.  Accordingly, the Court DENIES without prejudice Edrington Group and Robertson's

7   motions to stay pending completion of Edrington USA's arbitration with Shansby.

8   **II.    Dismissal Motions**

9          **A.  Lack of Personal Jurisdiction**

10         Plaintiff contends the Court has specific jurisdiction over Robertson.[2]  To determine

11  personal jurisdiction, a federal district court applies the long-arm statute of the state in which it

12  sits.  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101,

13  1106 (9th Cir. 2020).  Because California's long-arm statute allows the exercise of jurisdiction to

14  the full extent permissible under the U.S. Constitution, the Court's inquiry considers whether the

15  exercise of jurisdiction comports with due process.  *Id.*; *see* Cal. Code Civ. Proc. § 410.10.

16  "Because California's long-arm jurisdictional statute is coextensive with federal due process

17  requirements, the jurisdictional analyses under state law and federal due process are the same."  *In

18  re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019).

19         "Due process constrains a State's authority to bind a nonresident defendant to a judgment

20  of its courts.  A nonresident defendant must have certain minimum contacts with [the forum] such

21  that the maintenance of the suit does not offend traditional notions of fair play and substantial

22  justice."  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).  For a

23  court to have specific jurisdiction over a defendant, the defendant's suit-related conduct must

24  create a substantial connection with the forum state.  *Williams v. Yamaha Motor Co.*, 851 F.3d

25  1015, 1022-23 (9th Cir. 2017).  The Court may only exercise specific jurisdiction over Robertson

26  if 1) Robertson purposefully directed its activities toward the forum or availed itself of the

27  ───────────────

28  [2] Plaintiff does not contend Robertson is subject to the Court's general jurisdiction.  (Dkt. No. 54
    at 12.)

United States District Court
Northern District of California

privileges of conducting activities in the forum; 2) Plaintiff's claim arises out of or relates to Robertson's forum-related activities; and 3) the Court's exercise of jurisdiction comports with fair play and substantial justice. *Axiom Foods, Inc.*, 874 F.3d at 1068. Plaintiff bears the burden of proof as to the first two prongs of the minimum-contacts test before the burden shifts to Robertson to demonstrate the exercise of jurisdiction would be unreasonable. *Id.* at 1068-69.

The only complaint allegation specific to Robertson is that it is a charitable trust registered in Scotland that owns and operates Edrington. (Dkt. No. 1 at 9 ¶ 4.) This allegation is insufficient to support the exercise of personal jurisdiction. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one. . .in a forum state may not be attributed to the other." (cleaned up)); *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985) ("The existence of a parent-subsidiary relationship is insufficient to establish personal jurisdiction over Companies.").

So, the claims against Robertson must be dismissed. The remaining question is whether leave to amend should be granted. In support of their motion to dismiss, Defendants submit an unrebutted declaration establishing Robertson has never 1) held meetings or conducted trust administration or management activities in California; 2) maintained offices or held, owned, or leased any real property in California; 3) registered to do business or had a registered agent for service in California; 4) held a bank account in California; 5) negotiated, signed, ratified, or consented to the Distribution Agreements or contracted with Shansby or the Shansby Community Property Trust; or 6) been involved in business activities concerning Tequila Partida. (Dkt. No. 53-2 at 2-3.) Additionally, no representative of Robertson attended the Glasgow meeting alleged in Plaintiff's complaint. (*Id.* at 3.)

At oral argument, Plaintiff insisted he could, in good faith, allege further facts to establish

United States District Court
Northern District of California

5

1    the Court's personal jurisdiction over Robertson.  Accordingly, Robertson's motion to dismiss for

2    lack of personal jurisdiction is GRANTED with leave to amend.

3    **B.  Failure to State a Claim**

4        Edrington Group and Robertson seek dismissal under Federal Rule of Civil Procedure

5    12(b)(6) for failure to state a claim.  For the complaint to survive, its factual allegations must raise

6    a plausible right to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).  Though the

7    Court must accept the complaint's factual allegations as true, conclusory assertions are insufficient

8    to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible when

9    the plaintiff pleads enough factual content to justify the reasonable inference that the defendant is

10    liable for the misconduct alleged.  *Id.*

11    **a.  Right to Sue for Purported Injuries to Non-Party Tequila Partida**

12        Defendants argue the complaint must be dismissed because each cause of action alleges

13    injury to Tequila Partida, and Plaintiff, a former Partida shareholder, cannot sue for Partida's

14    injuries.  While one who has suffered injury both as an owner of a corporate entity and in an

15    individual capacity is entitled to pursue remedies in both capacities, individuals have no standing

16    to enforce derivative rights belonging to a corporation.  *Denevi v. LGCC, LLC*, 121 Cal. App. 4th

17    1211, 1221 (2004); *see also Sherman*, 601 F.2d at 439 n.13 ("Where there is an injury to the

18    corporation, the cause of action should be brought by the corporation, or by the shareholders

19    derivatively if the corporation fails to act; only for separate individual damage does an individual

20    cause of action lie.  [Plaintiff] lacked standing as a third party beneficiary, since his status was that

21    of an incidental beneficiary.  Where there was no direct undertaking or intention to benefit him, he

22    had no rights under such a contract."); *Hilliard v. Harbour*, 12 Cal. App. 5th 1006, 1015 (2017)

23    (holding controlling member lacked standing to sue lender individually for claims arising out of

24    alleged fraudulent misrepresentations by lender and manager because the alleged

25    misrepresentations were not designed to induce conduct by the controlling member, but to induce

26    corporate conduct); *Crispo v. Musk*, No. 2022-0666-KSJM, 2022 WL 6693660, at *2-7 (Del. Ch.

27    Oct. 11, 2022) (denying standing to shareholders seeking to enforce merger agreement); *Orban v.

28    Field*, No. CIV. A. 12820, 1993 WL 547187, at *9 (Del. Ch. Dec. 30, 1993) ("The idea of

*United States District Court*
*Northern District of California*

1   shareholders having directly enforceable rights as third party beneficiaries to corporate contracts

2   is, I think, one that should be resisted. One of the consequences of the limited liability that

3   shareholders enjoy is that the law treats corporations as legal persons not simply agents for

4   shareholders.").

5          Drawing all reasonable inferences in Plaintiff's favor, none of Plaintiff's claims are

6   personal; each alleges injury to Tequila Partida's business or whole body of stock.  (Dkt. No. 1 at

7   11-13 ¶¶ 17-21, 29, 32, 34.)  But for Plaintiff's former shareholder status, he would not have been

8   injured by Defendants' alleged conduct.  *Id*.  Plaintiff's argument to the contrary is fatally circular:

9   "Shansby suffered damages because his membership interest in Tequila Partida was substantially

10  impaired, as reflected in the price he was paid for his membership interest in the company."  (Dkt.

11  No. 54 at 14.)  Why does Plaintiff allege he suffered damages?  Because his membership interest

12  in Tequila Partida was substantially impaired.  (Dkt. No. 1 at 11-14 ¶¶ 21, 29, 32, 38, 44).  What

13  does Plaintiff allege caused this substantial impairment?  Edrington's failure to perform their

14  obligations **to Tequila Partida** under the Distribution Agreements to which Plaintiff was neither a

15  party nor an intended third-party beneficiary.  (Dkt. No. 1 at 11-14 ¶¶ 20-21, 26, 28-29, 31-32, 34-

16  38, 44).

17         Plaintiff's reliance on *Denevi* is misplaced.  In *Denevi*, the individual plaintiff brought two

18  causes of action against the defendants for inducing him to transfer purchase rights he owned

19  individually to a limited liability corporation (LLC) by fraudulently or negligently promising to

20  obtain adequate funds to purchase and develop the property.  *Denevi*, 121 Cal. App. 4th at 1216.

21  The *Denevi* court allowed the individual plaintiff to proceed with those claims because they arose

22  prior to the formation of the LLC, and the loss of the LLC's rights was neither a necessary nor

23  sufficient aspect of the plaintiff's personal claims.  *Id*. at 1218–19.  The individual plaintiff also

24  brought claims for negligent loss of property in escrow and breach of fiduciary duty in allowing

25  loss of property in escrow.  *Id*. at 1216.  As to the escrow claims, the *Denevi* court held they were

26  properly dismissed as derivative because they arose from duties owed to the LLC, not to the

27  plaintiff as an individual.  *Id*. at 1218-19 ("The gist of the derivative action was [the LLC's] loss

28  of the purchase rights due to defendants' mismanagement or malfeasance after that entity was

formed—in particular, the failure to deposit the entire down payment into escrow in cash. Plaintiff's personal claims all arose prior to that time.").

Here, each of Plaintiff's claims arise from duties owed to Tequila Partida. (Dkt. No. 1 at 13- ¶¶ 28-29, 31-32, 34-35, 41, 44.)  Plaintiff pleads no claims asserting rights he possesses independent of Tequila Partida, so his claims are derivative, not personal.  Shansby created Tequila Partida as an LLC to limit his liability, and "there is no policy reason to permit him to enjoy the benefits of that limitation without accepting the concomitant burdens it entails." *Hilliard*, 12 Cal. App. 5th at 1015.  Accordingly, the complaint must be dismissed.

Plaintiff's misrepresentation claim fails for an additional reason: it is not pled with particularity as required by Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), Plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  The complaint only alleges "Shansby met with the top executives of Edrington in Glasgow," who "committed on behalf of all three ownership-related entities, to invest the necessary resources in the Tequila Partida brand to ensure its growth and success."  (Dkt. No. 1 at 11 ¶ 19.)  Plaintiff "entrusted the management, sales, marketing and distribution of Tequila Partida products to Edrington in reliance on Edrington's representation that it would devote the necessary resources to those tasks, and that it could attain the performance targets set forth in the [Distribution] Agreements."  (*Id*. at 13-14 ¶ 34.)  Edrington allegedly made this representation "without the intent to perform their obligations, or with the intent to perform them only if they determined that it was in their own business interests to do so," and with awareness of Plaintiff's "business plan" to sell his membership interest in Tequila Partida.  (*Id*. at 14 ¶¶ 35-37.)  Sure.  But with whom did Plaintiff meet in Glasgow?  Who committed to invest resources in Tequila Partida?  How was the commitment made?  On what authority did these alleged top executives make this commitment on behalf of Edrington USA, Edrington Group, and Robertson?  When did the Glasgow meeting even occur?  Plaintiff's misrepresentation claim is insufficiently pled because the complaint fails to articulate the who, what, when, and how of the misconduct alleged.  *Kearns*, 567 F.3d at 1124-25.

1     Accordingly, the Court GRANTS Defendants' 12(b)(6) motion to dismiss the claims

2 against Edrington Group and Robertson with leave to amend.  *Yagman v. Garcetti*, 852 F.3d 859,

3 863 (9th Cir. 2017) (ruling district courts should grant leave to amend unless the "pleading could

4 not possibly be cured by the allegation of other facts.").

5                                         **CONCLUSION**

6     Defendants' motions to stay pending completion of Edrington USA's arbitration with

7 Shansby are DENIED without prejudice.  Robertson's motion to dismiss for lack of personal

8 jurisdiction is GRANTED with leave to amend.  Defendants' 12(b)(6) motions to dismiss are

9 GRANTED with leave to amend.  An amended complaint shall be filed on or before September 5,

10 2023.

11     This Order disposes of Docket Nos. 52 and 53.

12     **IT IS SO ORDERED.**

13 Dated: August 3, 2023

14

15

16                                    JACQUELINE SCOTT CORLEY
                                      United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California